## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **KAREN DEDRICK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ABILENE MOTOR EXPRESS, INC.,** | ) | JUDGE JAMES P. JONES |
| **and ABILENE MOTOR EXPRESS, LLC** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

*John A. Martin and Jason A. Mullins, PENNSTUART, Bristol, Tennessee, for Plaintiff; Michael L. Donner, Sr. and Matthias J. Kaseorg, SETLIFF LAW, P.C., Glen Allen, Virginia, for Defendants.*

In this civil case, the plaintiff, Karen Dedrick, asserts claims against her former employers, Abilene Motor Express, Inc., and Abilene Motor Express, LLC, under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons stated, I will deny the motions as to Counts I, II, and III, and grant the motions as to Count IV.

### I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the motions to dismiss.

On May 19, 2017, Dedrick was diagnosed with a benign brain tumor.  At the time, she was working for the defendants as a driver manager in the defendants' Wytheville, Virginia, office.[1]  As a driver manager, Dedrick communicated dispatch logistical instructions to tractor-trailer drivers to coordinate pick-ups and deliveries. Although her diagnosis does not require her to undergo surgery or any invasive treatment, she suffers from migraines that cause severe and debilitating headaches, dizziness, and frequent nausea.  During a migraine episode, she experiences symptoms "mimicking stroke and seizure like activity."  Compl. ¶ 27, ECF No. 1. Her symptoms "alter[] her ability to function," and she is "unable to drive, travel, read printed material, view computer imaging and to be in a heavily-lit room[]."  *Id.* ¶¶ 40, 25.

In September 2017, Dedrick was hospitalized with symptoms resembling a series of "mini strokes."  *Id.* ¶ 16.  While she was at home, still recovering on medical leave without release from her medical providers, the defendants terminated Dedrick for failing to update them as to her return date.  Thereafter, Dedrick met with both her primary care physician and neurosurgeon to develop an appropriate course of treatment.  They recommended that she undergo regular testing and submit to an annual magnetic resonance imaging (MRI) scan to monitor the tumor.

---

[1] It is alleged that Abilene Motor Express, LLC, became the successor entity to Abilene Motor Express, Inc., on December 20, 2018.  Compl. ¶ 5, ECF No. 1.

In late November 2017, the defendants approached Dedrick about returning to work in her role as a driver manager.  Dedrick provided, at the defendants' request, a fitness for duty report that detailed her medical condition and outlined certain workplace restrictions, including the need for regular breaks every two hours and other limits on physical activity.  She also informed the defendants that she would need to continue her medical treatment, namely attending her regularly scheduled doctor's appointments, and that she would require occasional absences from work if she experienced a migraine headache.  The defendants agreed to accommodate Dedrick's requests, provided she make up any hours on the weekend.  Dedrick agreed.  On January 8, 2018, Dedrick officially resumed her role as a driver manager.

Dedrick alleges that, after starting back to work, her direct supervisor, Kevin Coldiron, disclosed information about her medical condition to her coworkers and openly joked with them about it.  On August 6, 2019, Dedrick experienced a migraine headache that required her to seek emergency room care.  She informed Coldiron that her emergency room doctors had advised her not to return to work that day, and her physician, Dr. Mathew Kaatz, had also advised Dedrick not return to work until August 12, 2019.

She returned to work on August 12, 2019, working the rest of the week without incident.  On the day that she returned, Coldiron asked her, in the presence of a coworker, "what diagnosis had been assigned to her by her doctors."  *Id.* ¶ 76.

She offered to make up the missed hours that weekend, but Coldiron informed her that would not be necessary.  On August 19, 2019, Dedrick was terminated.  Dedrick maintains that she was fired because of her disability and that the defendants disclosed her private medical information in violation of the ADA.

The plaintiff also alleges that the defendants retaliated against her for participating in a Title VII protected activity.  In 2017, another employee, Shane Williams, filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging various forms of workplace discrimination, including that Coldiron harassed and abused him based on his sexual orientation.  Dedrick personally witnessed the abusive workplace behavior and Williams identified her as a corroborating witness.  On July 1, 2019, Dedrick provided sworn statements to an EEOC investigator as a part of the EEOC's investigation into Williams' charge.

Dedrick alleges, based "upon information and belief," that the defendants knew she had provided statements to the EEOC investigator.  *Id.* ¶ 62.  Moreover, Dedrick alleges that on two separate occasions, Coldiron made threatening statements to her about her involvement in Williams' case.  First, Coldiron called an office meeting and told all employees in attendance that if he found out they were "talking to Williams, they would be terminated."  *Id.* ¶ 56.  Second, Coldiron approached Dedrick directly and demanded to know why her name was "wrapped up in anything involving Shane William's case."  *Id.* ¶ 59.

Finally, Dedrick alleges that she was terminated because of her sex.  She claims that she and other female employees at the defendants' Wytheville, Virginia, facility were treated differently than their male coworkers.  Specifically, she maintains that her supervisor Coldiron subjected only female subordinates, including Dedrick, to berating comments and admonished them for speaking loudly on the telephone, but did not admonish male subordinates for similar behavior.  In addition, Dedrick claims that from March 2019 to August 2019, the defendants terminated three female employees, including Dedrick, but no male employees.

II.

After exhausting her administrative remedies, Dedrick filed this lawsuit on June 9, 2021.  She alleges that the defendants violated the ADA and Title VII in four ways: (1) discriminating against her because of her disability (Count I); (2) retaliating against her for participating in a protected activity (Count II); (3) disclosing her confidential medical information (Count III); and (4) discriminating against her because of her sex (Count IV).  The defendants have moved to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  The parties have fully briefed the issues and the matter is now ripe for decision.[2]

---

[2]  I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In evaluating a pleading, the court accepts as true all well-pled facts. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III.

### A. COUNT I – ADA DISCRIMINATION.

The ADA prohibits discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish disability discrimination, an individual must demonstrate that (1) she has an ADA-covered disability; (2) she is a "qualified individual," meaning that she was able to perform the essential functions

of her job; and (3) her employer took an adverse action against her because of her disability. *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686–87 (4th Cir. 1997).

### 1. ADA-Covered Disability.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA does not define "major life activities," but the regulations explain that it includes functions such as "[c]aring for oneself," "walking," "seeing," "hearing," "speaking," "learning," and "working." 29 C.F.R. § 1630.2(i)(1)(i).

Congress broadened the definition of "disability" by enacting the 2008 Amendments Act to the ADA ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553 (2008). *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). The ADAAA's purpose was to "make it 'easier for people with disabilities to obtain protection under the ADA,'" and to clarify that the focus should be on "whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.* In other words, "[t]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* (citation omitted).

Under the 2008 amendments, "[a]n impairment that is *episodic* . . . is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D) (emphasis added).   The regulations instruct that "[t]he term 'substantially limits' shall be construed broadly in favor expansive coverage, to the maximum extent permitted by the terms of the ADA," 29 C.F.R. § 1630.2(j)(1)(i), and "[t]he fact that the periods during which an episodic impairment is active . . . may be brief or occur infrequently is no longer relevant to determining whether the impairment substantial limits a major life activity." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (citation omitted).

Here, Dedrick appears to argue that she qualifies as disabled under either of the ADA's three prongs.[3]  In response, the defendants concede that Dedrick's brain tumor is a physical impairment.[4]  However, they argue that she is not disabled under the ADA for two reasons.  First, the defendants assert that Dedrick failed to plead that any major life activities were affected by her condition.  Second, even if "working" is the alleged affected activity, the defendants argue that her condition

---

[3]  The plaintiff specifically alleges that she is disabled under the record-of and regarded-as prongs.  Compl. ¶ 40, ECF No. 1.  I also find that she alleges facts that could support a finding that she is disabled under the actual-disability prong.  *Id.* ¶¶ 40, 24–25, 28–29.

[4]  The defendants appear to argue that the Fourth Circuit has held that migraines and nausea are not qualifying "physical or mental" impairments.  But in the Reply, the defendants concede that a brain tumor *is* a physical impairment. I therefore find that the defendants no longer contest this issue.

does not "substantially limit" her ability to do her job, namely because her migraine headaches are intermittent and limited in duration.

First, I disagree that Dedrick failed to plead any impacted major life activities. A plaintiff is not required to use any magic words, such as reciting verbatim from the EEOC's non-exhaustive list of major life activities, to state a plausible ADA claim.    Here, Dedrick claims that her symptoms — nausea, dizziness, and uncontrollable and debilitating migraines — limit her "ability to function."  Compl. ¶ 40, ECF No. 1.  She cannot "view computer imaging" or "be in a heavily-lit room[]" — necessary requirements for a typical office job. *Id.* ¶ 25.  She also alleges that she informed defendants that, based on her doctor's recommendations, she should limit her physical activity at work and may require absences when afflicted by a migraine.  I may reasonably infer, then, that Dedrick alleges "working" as the impaired major life activity.

Second, I find that Dedrick has sufficiently alleged that her impairment "substantially limits" her ability to work and that she is therefore disabled under the actual-disability prong.  Although Dedrick's migraine headaches are intermittent, that does not necessarily mean that she is not "disabled" under the ADA.  The relevant inquiry is whether, despite their short duration, Dedrick's symptoms substantially limit her ability to work when they do occur.  The EEOC regulations define substantial limitation as "one that substantially limits the ability of an

individual to perform a major life activity as compared to most people in the general population." *Jacobs*, 780 F.3d at 573 (internal quotation marks and citation omitted). But "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 237 (4th Cir. 2016) (citation omitted).

Here, Dedrick alleges that she "has no way of knowing when she will be afflicted by one of these [migraine] headaches," but that when they do occur, they are "debilitating." Compl. ¶ 24, ECF No. 1. She is "unable to drive, travel, read printed material, view computer imaging and to be in a heavily-lit room[]." *Id.* ¶ 25. She describes prior episodes as consistent with "mini strokes," for which she was previously hospitalized on at least two occasions. *Id.* ¶ 16. It is plausible that such symptoms "substantially limit" her ability to work, as compared to the general population. That is all she is required to state to survive a motion to dismiss.

I also find that Dedrick is disabled under the record-of prong. An individual has a "record of" a disability if she "has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1); *Cochran v. Holder*, 436 F. App'x 227, 233 (4th Cir. 2011) (unpublished). Dedrick's claim under the record-of prong succeeds for all the same reasons as her claim of an actual disability. In 2017, she was diagnosed with a brain

tumor. She has numerous medical records, including hospitalization records, attesting not only to her diagnosis but also to her migraine symptoms. Moreover, as explained above, Dedrick's impairment substantially limits her ability to work.

Finally, she is also disabled under the regarded-as prong. An individual is regarded as having a disability if she has been subjected to a prohibited action because of an "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *Miller v. Md. Dept. of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020) (unpublished). Here, Dedrick clearly pleaded that she was subjected to a prohibited action because she was terminated. She further alleges that the reason for her termination was her physical impairment — that is, she was fired for missing work so that she could go to the emergency room and stay home to recover from debilitating migraine headaches caused by her brain tumor.

### 2. Qualified Individual.

To satisfy the second element of a prima facie case of ADA discrimination, a plaintiff must demonstrate that "with or without reasonable accommodation, [she] can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Even if a person is unable to perform the essential functions of the job in question, the "court must nevertheless determine whether the person could do the job with reasonable accommodation." *Martinson*, 104 F.3d at 687 (citation omitted).

A reasonable accommodation may include a "modified work schedule[]." 42 U.S.C. § 12111(9)(B). Moreover, the Fourth Circuit has recognized that allowing an employee to take leave to attend medical appointments is a reasonable accommodation. *Terry v. Perdue*, No. 20-2016, 2021 WL 3418124, at *2 (4th Cir. Aug. 5, 2021) (unpublished).

The defendants argue that Dedrick is "not qualified" because she failed to show up to work, and a regular and reliable level of attendance is an essential function of one's job. *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 56–57, 59 (4th Cir. 2002) (unpublished) (holding that an employee was "not qualified" under the ADA because he could only work on a part-time basis when the position demanded full-time attendance); *Hannah P. v. Coats*, 916 F.3d 327, 343 (4th Cir. 2019). They also claim that leave to attend medical appointments is not a reasonable accommodation.

I disagree. Here, Dedrick was working full-time, and she was not simply absent from work. She obtained defendants' prior approval for leave to attend her doctor's appointments, which is a reasonable accommodation, and she even complied with the defendants' request to make-up any missed time on the weekend. Compl. ¶ 29, ECF No. 1. Dedrick maintains that she continued to perform all her essential duties with the modified work schedule, and she never received "a written reprimand or verbal warning regarding her absences or make-up schedule." *Id.* at ¶ 33. Moreover, defendants rehired Dedrick in 2018, with "full and complete

knowledge of her medical condition and of her medical limitations," which indicates
their belief that she could "perform the essential functions of her job." *Id.* at ¶ 45.
In sum, I find that Dedrick is a "qualified individual" under the ADA.

### 3. Causation.

To satisfy the third element of a prima facie case of ADA discrimination, a
plaintiff must meet the but-for causation standard — that is, she was subjected to an
adverse employment action, such as termination, because of her disability. *Gentry*,
816 F.3d at 235–36. Here, Dedrick alleges that her supervisor made disparaging
comments about her disability and related accommodations in front of co-workers.
She specifically alleges that on the day she returned from disability-related leave,
Coldiron questioned her about her prognosis and then informed her that making up
hours on the weekend would no longer be necessary. Dedrick was terminated only
one week after returning to work. The proximity of her termination to her return
from leave, along with the disparaging remarks made by her supervisor, make it
plausible at this stage of the proceedings that she was fired because of her disability.

Accordingly, I will deny the defendants' motions as to Count I.

### B.  COUNT II – TITLE VII RETALIATION.

Title VII forbids employment discrimination based on "race, color, religion,
sex or national origin," 42 U.S.C. § 2000e–2(a), and its anti-retaliation provision
"prevent[s] an employer from interfering (through retaliation) with an employee's

efforts to secure or advance enforcement of [Title VII's] basic guarantees."
*DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (citations omitted).
To establish a retaliation claim, a plaintiff must show "(1) that she engaged in a
protected activity; (2) that her employer took an adverse employment action against
her; and (3) that there was a causal link between the two events." *Boyer–Liberto v.
Fontainebleau Corp.,* 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal
quotation marks and citations omitted).

It is undisputed that Dedrick engaged in a protected activity (participating in
an EEOC investigation), *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253,
259 (4th Cir. 1998), and that she experienced an adverse employment action
(termination). The only disputed issue is whether Dedrick has pleaded facts that, if
true, make a causal link between the two events plausible. I find that she has.

To prove a causal connection, a plaintiff must show that she was fired *because*
she engaged in the protected activity — that is, that retaliation was the "but-for"
cause of the challenged adverse employment action (termination). *Foster v. Univ.
of Md.-E Shore*, 787 F.3d 243, 252 (4th Cir. 2015). This means that retaliation need
not be the sole cause, "in isolation," of the plaintiff's termination. *Guessous v.
Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). Rather, it simply
means that termination "would not have occurred" except for it. *Id.* At the motion
to dismiss stage, establishing causation is "not an onerous burden." *Roberts v. Glenn*

*Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021).  A plaintiff is merely required to state enough facts to allow the court to infer that she has a plausible claim.

The defendants argue that the plaintiff failed to show that the defendants knew she had engaged in the protected activity, emphasizing that pleading "on information and belief" is not sufficient to defeat a motion to dismiss.  But even if they had such knowledge, the defendants contend there is not a sufficient temporal proximity between the two events to establish retaliatory intent.  I disagree.

First, a defendant must know that the plaintiff engaged in a protected activity. *Guessous*, 828 F.3d at 217.  But even after *Iqbal* and *Twombly*, a plaintiff may state a claim based "upon information and belief," especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible. *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  In general, discriminatory intent is information that is peculiarly within the defendant's knowledge and control. *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008).

Here, Dedrick alleges that in January 2018, Coldiron called an office meeting and threatened her and all present employees that if he learned that anyone was talking to Williams, "they would be terminated."  Compl. ¶ 56, ECF No. 1.  She also claims that Coldiron demanded to know "why her name was continually wrapped up in anything involving Shane William's case," and that he was *"visibly angry"* after she responded she did not know the answer. *Id.* ¶ 59.  On July 1, 2019, Dedrick

participated in the EEOC's investigation, giving sworn statements to an EEOC investigator.  Dedrick was terminated on August 19, 2019.

Although Dedrick pleaded that defendants knew about her participation in the EEOC investigation based only on "information and belief," and terminated her in retaliation for it, this is information more likely within the knowledge of the defendants, not the plaintiff.  In any event, it is plausible to infer that defendants knew about her participation based on the facts that her supervisor knew an EEOC charge had been filed and she was suspected of being "involve[ed]."  *Id.* ¶ 59.

Second, a close temporal relationship between the two events is usually sufficient to establish causality at the motion to dismiss stage.  *Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (holding that terminating an employee within one month of her return from FLMA leave was sufficient).  But closeness in time is "far from conclusive[]" to establish causation, *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 551 (4th Cir. 2006), and there is no "bright-line rule." *Roberts,* 998 F.3d at 127.  For instance, a two-month lapse when coupled with other evidence of a causal relationship may be sufficient to infer causation.  *Id.*

Here, the hostile comments, coupled with the proximity between her participation in the investigation and her termination, give rise to a plausible inference of retaliatory intent and interference at this early stage of the proceedings.  Although a lapse of seven weeks between the two events raises a weaker inference,

temporal proximity alone is not conclusive.  Dedrick also alleges other evidence, namely the hostile comments regarding what would happen if she assisted Williams.

Therefore, I find that the plaintiff has stated a plausible claim of retaliation.

### C.  COUNT III – ADA BREACH OF CONFIDENTIALITY.

The ADA limits what information employers may seek and disclose about their employees' medical conditions.  42 U.S.C. § 12112(d).  An employer may obtain information about an employee's disability in one of three ways: a required medical examination for job applicants, *id.* § 12112(d)(3), a voluntary medical examination, conducted as a part of an employee health program, *id.* § 12112(d)(4), or an inquiry into the ability of an employee or job-applicant's ability to perform job-related functions, *id.* §§ 12112(d)(2)(B), 12112(d)(4)(B). Information received by employers in this way is treated "as a confidential medical record, except that supervisors or managers can be informed regarding necessary [work] restrictions . . . and accommodations."  *Id.* at § 12112(d)(3)(B).  However, the ADA does not protect information voluntarily disclosed by the plaintiff.  *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006).

Here, Dedrick asserts that the defendants only acquired information about her disability after they demanded verification of her condition by requiring that she submit a fitness for duty form before she rejoined the company in January 2018.  She alleges that her supervisor then improperly disclosed this information to her co-

workers, including on numerous occasions complaining about her need to take breaks if she experienced symptoms and joking about her need for frequent medical testing.  On one occasion, Dedrick maintains that her supervisor asked her "about her need for referral to a surgeon in the presence of . . . two co-workers," and thereafter, he ignored Dedrick's request that he must refrain from future disclosures. Compl. ¶¶ 72–75, ECF No. 1.  Dedrick reports that her supervisor again inquired about her medical condition following her hospitalization due to a migraine episode in August 2019, specifically asking, in the presence of co-workers, "what diagnosis had been assigned to her by her doctors."  *Id.* ¶ 76.  The defendants argue that any information disclosed about Dedrick's disability was not "confidential medical information" under the ADA because she voluntarily disclosed her diagnosis. Specifically, they point to a statement made in Dedrick's EEOC charge that she promptly informed her employers of her initial tumor diagnosis back in 2017.[5]

I disagree.  Any information disclosed in the 2018 fitness for duty report would clearly be an employer-related medical inquiry protected by the ADA.  It is also plausible that Dedrick only provided information to her employer following her

---

[5] I note that the defendants reference statements made by the plaintiff in her EEOC charge, but they did not file a copy of it as an exhibit to their motions to dismiss.  I may consider documents attached to the motion without converting a motion to dismiss into one for summary judgment, so long as they are integral to the complaint and authentic.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Because this document was not filed, I may not consider it in a motion to dismiss, but in any event, I find that Dedrick has pled a plausible claim at this stage of the proceedings.

initial diagnosis in response to their requests for a prognosis on her return to work. Moreover, the information disclosed was not merely that she had a tumor but rather that she required certain workplace accommodations and regular medical testing. In any event, whether Dedrick voluntarily disclosed her disability, or whether the defendants acquired the information solely through an employment-related medical inquiry, is a question of fact not appropriate for resolution in a motion to dismiss. *Shoun v. Best Formed Plastics, Inc.*, 28 F.Supp.3d 786, 790 (N.D. Ind. 2014).

Accordingly, I find that, at this stage of the proceedings, she has alleged a plausible claim for breach of confidentiality.

### D.  COUNT IV – TITLE VII DISCRIMINATION.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Absent direct evidence, to establish a prima facie case of discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of her discharge; and (4) she was treated different from similarly situated employees outside of the protected class. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir.).

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" to survive a motion to

dismiss.  *Id.*  Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citation omitted).

Although Dedrick conclusorily alleges that she was terminated based on her sex, she does not assert facts establishing the plausibility of that allegation.  She alleges that she, along with two other female employees, were treated differently than male employees by Coldiron.  Specifically, female employees were "subjected to berating, demeaning, and insulting comments" and that Coldiron "routinely and consistently publicly admonished" them in a "fashion far different from his treatment of male employees."  Compl. ¶ 88, ECF No. 1.  Between March 2019 and August 2019, three female employees, including Dedrick, were terminated, but no male employees were terminated.  But the Complaint fails to establish a plausible basis for believing that the plaintiff was similarly situated to the male employees.  The fact that only female employees were terminated during this window of time, absent more, does not raise the claim of sex discrimination above mere speculation.

IV.

For the foregoing reasons, the motions to dismiss, ECF Nos. 10 and 12, are DENIED IN PART and GRANTED IN PART, as follows:

1.     The motions to dismiss are DENIED as to Counts One, Two, and Three, and

2.     The motions to dismiss are GRANTED as to Count Four.

-20-

It is so **ORDERED**.

ENTER:   November 8, 2021

/s/  JAMES P. JONES
Senior United States District Judge